UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C. A. No.

```
RECEIPT #_____
AMOUNT $ 150
SUMMONS ISSUED Y
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE  3-24-04
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CREATIVE SYSTEM DYNAMICS,       *
     Plaintiff                              *
                                              *
                                              *
v.                                              *
                                              *
PARAMETRIC TECHNOLOGY           *
CORPORATION,                            *
     Defendant                              *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**04 CV 10575 PBS**

## COMPLAINT WITH JURY DEMAND

Plaintiff Creative System Dynamics ("CSD" or Plaintiff), by its attorneys, Scott Lathrop & Associates, states for its Complaint against defendant Parametric Technology Corporation ("PTC" or Defendant), as follows:

## NATURE OF THE ACTION

1.    This is a civil action for breach of contract. CSD seeks to recover money PTC is obligated to pay CSD as compensation for services it provided to PTC. PTC has failed and/or refuses to pay the money it owes to CSD. As a result of PTC's failure to pay all sums due and owing to CSD, PTC has breached its agreements with CSD. Accordingly, CSD seeks monetary damages in the amount owed to CSD, plus interest, costs and attorneys fees as applicable by law.

1

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff CSD is a corporation duly organized and existing under the laws of the State of Michigan, with its principal place of business located at 17515 West Nine Mile Road, Suite 875, Southfield, Michigan 48075.

3. Upon information and belief, Defendant PTC is a Massachusetts corporation with its principal place of business located at 140 Kendrick Street in Needham, Massachusetts. Defendant is engaged in the design, development, reproduction and distribution of computer software.

4. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and ©).

## GENERAL ALLEGATIONS

6. For more than five years, CSD has been an industry leader in providing services for the design, development and implementation of software technology.

7. Beginning in November 1999, PTC retained CSD to assist it on several software development and implementation projects.

8. For several years, CSD assisted PTC on more than 15 projects involving implementation of Windchill software products for PTC customers. Prior to the successful completion of each project, PTC would thoroughly check CSD's work on the project.

9. CSD successfully completed each one of these projects.

10. Although PTC regularly retained CSD to assist it, PTC never entered into a written agreement with CSD for CSD services until 2003.

11. In 2003, PTC memorialized its relationship with CSD pursuant to the Purchased Services Agreement dated May 23, 2003 (the "Services Agreement"), a copy of which is attached herein as Exhibit 1 and incorporated herein by reference.

12. The Services Agreement provides that the "Service Provider shall perform such services and provide such products and materials" as detailed in a statement of work or detailed on the "face of a purchase order issued by PTC." See Exhibit 1, ¶ 1.

13. The Services Agreement also provides, in pertinent part, that "[c]ommitments against this Agreement shall be in the form of a Purchase Order(s)." Exhibit 1, § 3.1.

14. Further, in paragraph 4 of the Services Agreement, PTC agreed that:

> Unless otherwise stated on the Purchase Order, Service Provider shall be paid sixty (60) days after a properly submitted invoice is received at PTC. Such invoice shall refer to the Purchase Order number issued, the hours expended and applicable rates or other applicable performance billing measurement authorized by the Purchase Order, the time period covered by the invoice and details of miscellaneous costs or expenses.

Exhibit 1.

15. The Services Agreement allows either party to terminate the Services Agreement and/or any Purchase Orders if "the other party neglects or fails to perform or observe any of its obligations hereunder and a cure is not effected within seven (7) days following its receipt of a termination notice issued by the terminating party." Exhibit 1, § 9.1.

16. The PTC purchase orders (the "Purchase Orders") set forth the details of the CSD services. The Purchase Orders also contain additional terms and conditions that are incorporated into the Services Agreement. A copy of the terms and conditions contained in the Purchase Orders is attached hereto as Exhibit 2.

## CSD and PTC Projects

### North American Bus Windchill Project

17. Upon information and belief, on or about May 23, 2003, PTC entered into an agreement with North American Bus, Inc. ("NAB") to provide Windchill software implementation services, support and maintenance (the "NAB Windchill Project").

18. On or about May 1, 2003, PTC retained CSD to assist PTC in the NAB Windchill Project, whereby CSD would assist PTC with Windchill implementation support on-site at NAB.

19. The scope CSD's services to PTC in the NAB Windchill Project are set forth in PTC's Purchase Order, # EP45386, ("EP45386"), a copy of which is attached herein as Exhibit 3. Pursuant to EP45386, CSD was to assist PTC on-site at NAB from approximately May 1, 2003 through May 28, 2003; however, PTC extended the project completion date to July 21, 2003.

20. During the duration of CSD's participation in the NAB Windchill Project, PTC served on-site at NAB as NAB Windchill Project Manager.

21. On or about July 21, 2003, CSD completed its portion of the project. On or about July 25, 2003, PTC requested that the CSD senior programmer on the NAB Windchill Project

provide additional software development programming support for 30 days.

22. During the months of August and September, CSD's senior programmer assisted PTC and NAB while offsite at CSD offices.

23. In September 2003, prior to CSD's release by PTC from the NAB Windchill Project, PTC thoroughly tested the NAB Windchill program.

24. CSD successfully completed its on-site implementation in July, and its assistance with the project in September; however, upon information and belief, PTC continued to provide Windchill implementation services and support to NAB.

25. In September 2003, CSD forwarded to a customer satisfaction survey dated September 12, 2003 (the "Customer Satisfaction Survey") to PTC, a copy of which is attached herein at Exhibit 4. The Customer Satisfaction Survey requested PTC's assessment of CSD's performance during the NAB Windchill Project. CSD developed the survey to measure CSD's performance and to identify customer satisfaction with its products and services.

26. On the Customer Satisfaction Survey, PTC expressly stated its satisfaction with CSD, giving CSD the highest ratings available. See Exhibit 4. The senior project manager of the NAB Windchill Project, who signed and dated the Customer Satisfaction Survey, expressly praised CSD's performance, stating: "CSD far exceeded my expectations. First class support from a first class service provider." See Exhibit 4.

27. On or about June 2003, CSD properly submitted the first of several NAB Windchill Project invoices to PTC for payment.

28. The following invoices were properly submitted to PTC for payment: Invoice # 606303-PTC, dated June 3, 2003; Invoice # 3541-PTC, dated June 5, 2003; Invoice # 67899-PTC, originally dated June 30, 2003; and Invoice # 3716-PTC, dated September 10, 2003 (revised invoice date); Invoice # 28073-PTC, dated July 28, 2003; Invoice # 69377-PTC, dated September 26, 2003 (revised invoice date); and Invoice # 97586-PTC, dated September 30, 2003 (collectively, the "Paid Invoices").

29. PTC paid CSD the amounts owed under the Paid Invoices.

30. CSD also properly submitted the following invoices for payment with respect to the NAB Windchill Implementation Project: Invoice # 8081-PTC, dated August 18, 2003 (revised invoice date September 9, 2003); and Invoice # 13425-PTC, dated September 29, 2003, copies of which are attached herein as Exhibit 5. Under the terms of the invoices, PTC agreed to pay: "net 20 days."

31. Although, as noted above, PTC continued to pay other NAB Windchill Project invoices dated through the end of September 30, 2003, PTC did not – and has not – paid Invoice# 8081-PTC and Invoice# 13425-PTC. The total amount due and owing under both invoices is $20,458.77. See Exhibit 5.

### United Defense Windchill Project

32. On or about September 22, 2003, PTC retained CSD to assist it in creating reports on Windchill on-site in Minnesota (the "United Defense Windchill Project").

33. Purchase Order #EP46547, dated September 22, 2003 ("EP46547"), sets forth the terms and conditions of CSD's retention. A copy is attached herein as Exhibit 6. Pursuant to EP46547, PTC agreed to pay: "net 20 days."

34. The United Defense Windchill Project was scheduled to be completed October 17, 2003 and payment remitted to CSD 20 days after project completion.

35. The project successfully ended October 24, 2003.

36. Following the completion of the project, CSD properly submitted Invoice # 91028 to PTC for payment. See Exhibit 6 for a copy of the invoice. The amount due and owing under the subject invoice is $22,985.10.

37. PTC did not – and has not – submitted payment for services CSD provided to PTC during the United Defense Windchill Project.

### Polaris Windchill Data Migration Project

38. On or about April 12, 2003, PTC retained CSD to assist PTC in creating a data vault for Pro/E Wildfire data to, among other things, increase the visibility of engineering data throughout the company on-site at Polaris Industries in Hamel, Minnesota (the "Polaris Windchill Project").

39. The Purchase Order PR43 ("PR43") contains the Polaris Windchill Project details. Pursuant to PR43, the project was scheduled from July 14, 2003 through July 25, 2003. Pursuant to PR43, PTC agreed to pay "net 20 days."

40. The project successfully ended July 25, 2003.

7

42. Following the completion of the project, CSD properly submitted Invoice # 5867 to PTC for payment, a copy of which is attached herein as Exhibit 7. The amount due and owing under the subject invoice is $16,044.06. See Exhibit 7.

43. PTC did not – and has not – submitted payment for services CSD provided to PTC during the Polaris Windchill Project.

### Reed Hycalog Windchill Project

44. Finally, on or about November 19, 2003, PTC retained CSD to provide business and consulting services in the implementation of Windchill software on-site at Reed Hycalog (the "Reed Hycalog Windchill Project").

45. Purchase Order #EP47110, dated November 19, 2003 ("EP47110"), contains the terms and conditions of Reed Hycalog Windchill Project. A copy of EP47110 is attached herein as Exhibit 8. Pursuant to EP47110, PTC agreed to pay "net 20 days." See Exhibit 8.

46. The scheduled completion date for the Reed Hycalog Windchill Project was September 11, 2003, with payment to be remitted to CSD 20 days after project completion.

47. The project successfully ended September 11, 2003.

48. Following the completion of the project, CSD properly submitted Invoice # 63321 to PTC for payment. The amount due and owing under the subject invoice is $20,106.06. See Exhibit 8 for a copy of the invoice.

49. PTC did not – and has not – submitted payment for services CSD provided to PTC during the Reed Hycalog Windchill Project.

### PTC's Defaults

50. In late September 2003, PTC ceased to make payments on *any* CSD invoices due and owing. As detailed above, PTC has failed to pay invoices numbered 8081-PTC; 13425-PTC; 91028-PTC; 5867; and 63321 (collectively, the "Unpaid Invoices"). The total amount due and owing under the Unpaid Invoices is $79,593.99.

51. Beginning in November 2003, CSD contacted PTC several times for payment for the remaining two NAB Windchill Project invoices and on November 21, 2003, PTC assured CSD that it would pay the invoices.

52. Although CSD had completed its work on the NAB Windchill Project several months earlier, PTC failed to remit payment on the remaining NAB Windchill Project invoices. Indeed, PTC failed to pay any of the Unpaid Invoices.

53. On December 18, 2003, CSD again contacted PTC for payment on the Unpaid Invoices.

54. PTC never responded to PTC and has failed and/or refuses to pay the Unpaid Invoices.

55. During January 2004, CSD attempted to contact PTC several times to discuss nonpayment of the Unpaid Invoices; however, PTC never responded to CSD.

56. PTC continues to fail and/or refuses to remit payment to CSD.

57. As a result of PTC's defaults, CSD sent a demand letter to PTC on February 25, 2004, demanding payment on the Unpaid Invoices, and terminating the Services Agreement and Purchase Orders. A copy of the Demand Letter is attached as Exhibit 9.

58.  To date, PTC has failed and/or refuses to honor its contractual obligations to CSD and, at this time, PTC owes to CSD $79,593.99 for unpaid services, and all fees, costs and expenses incurred by CSD in attempting to enforce the terms of the Services Agreement and Purchase Orders including, but not limited to, legal fees, costs and expenses.

### Count I: Breach of Contract
### (Breach of Contract)

59.  CSD realleges and incorporates by reference the allegations contained in paragraphs 1 through 58 hereof.

60.  The Services Agreement is a valid, binding, and enforceable contract between CSD and PTC.

61.  The Purchase Orders are valid, binding and enforceable contracts between CSD and PTC.

62.  PTC materially breached, and continues to breach, the Services Agreement and Purchase Orders by failing and/or refusing to pay to CSD the amounts due and owing under the Unpaid Invoices.

63.  CSD has performed all of its obligations under the Services Agreement and Purchase Orders.

64.  As a direct and proximate cause of PTC's breaches of the Services Agreement and Purchase Orders, CSD has been damaged in the amount of $79,593.99.

      **Wherefore**, CSD seeks entry of judgment against PTC and requests this Court:

      a.     Award to CSD damages in the amount of $79,593.99, plus interest, costs and attorneys fees as allowed by law.

      b.     Grant such further and other relief as it deems just and proper.

### Demand for Jury Trial

CSD requests a trial by jury on all counts.

                                        CREATIVE SYSTEM DYNAMICS
                                        by its attorneys,

                                        SCOTT A. LATHROP & ASSOCIATES

                                        */s/ Scott A. Lathrop*
                                        Scott A. Lathrop (BBO No. 287820)
                                        122 Old Ayer Road
                                        Groton, MA 01450
                                        (978) 448-8234

                                        and

                                        DYKEMA GOSSETT
                                        Sherrie L. Farrell (P57205)
                                        400 Renaissance Center
                                        Detroit, MI 48243
                                        (313) 568-6800

Date: March 24, 2004